**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48289**

| | | |
|---|---|---|
| TOM WILLIAMSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Boise, November 2021 Term |
| v. | ) | |
| | ) | Opinion Filed: February 25, 2022 |
| ADA COUNTY, ADA COUNTY | ) | |
| SHERIFF, ASHLEY RINO & D. | ) | Melanie Gagnepain, Clerk |
| KOPCZYNSKI, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Peter G. Barton, District Judge.

The district court decision is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u>.

Johannes S. A. Claus III PLLC, Boise, attorney for Appellant. Johannes S. A. Claus III argued.

Ada County Prosecuting Attorney, Boise, attorney for Respondents. Erica White argued.

_____

BEVAN, Chief Justice.

While incarcerated in the Ada County jail, Appellant Tom Williamson fell from the upper bunk bed during a request that he stand for roll call. Williamson suffered a head injury and sued Respondents Ada County and the Ada County Sheriff (collectively "Ada County"), alleging they were negligent in maintaining unsafe bunk beds, ordering him to descend from the top bunk bed for roll call, and in responding to injuries he suffered. The district court dismissed the case after concluding Ada County was immune from liability under Idaho Code sections 6-904(1) and 904B(5). Williamson appeals.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. Factual Background**

1

Williamson alleged the following facts in his complaint.[1] Williamson was booked into the Ada County jail on the evening of March 27, 2017. He was assigned a top bunk in a cell with three other inmates. On the morning of March 28, 2017, Williamson was awakened by two Ada County jailers for roll call. Williamson was told he could not respond from his bed and that he had to respond by standing in front of the jailer. Williamson proceeded to lower himself from the top bunk, but "due to the faulty design and configuration of the bunk beds used by Ada County, there was no ladder or other means to safely descend from the top of the bunk bed, and Mr. Williamson, attempting to comply with the jailer's order, fell backward from the top bunk onto the concrete floor of the Ada County jail cell." Williamson lost consciousness, the impact of his head striking the concrete floor causing blood to splatter about the cell. Upon regaining consciousness, Williamson was escorted by student nurses to the medical unit in his cell block. Shortly thereafter, Williamson was seen by a registered nurse (RN) in the medical unit of the Ada County jail. He was given 2 ice packs, 4x4 gauze pads, non-prescription ibuprofen, and instructed to shower to remove the blood from his hair. The RN did not inform Williamson what he should do if his condition failed to improve or if it worsened. The RN did not send Williamson to be examined by a doctor despite his request to see a physician. Williamson was taken back to his cell and told to return to his same top-level bunk. Despite his condition, he was left in a noisy cell with the lights on. Once back in his cell, around 9 a.m., Williamson experienced vertigo, double vision, and nausea. Williamson managed to get off his bunk bed and went to the urinal where he then vomited several times.

Around noon, Williamson was transferred to another cell with a bed on a lower bunk. Williamson told the jailer he wanted to see a doctor and was told that he would see a doctor the following morning. At 12:23 p.m., a licensed practical nurse (LPN) visited Williamson in his cell. Williamson complained of repeated vomiting and continual nausea, and again asked to see a doctor. The LPN did not take any action to schedule a doctor visit and did not advise him of any

---

[1] We recite these facts as alleged, which at this juncture are construed in Williamson's favor. Williamson's complaint was dismissed on Ada County's motion to dismiss. "In ruling on a 12(b)(6) motion, the district court is to consider only the facts set forth in the pleadings." *Hammer v. Ribi*, 162 Idaho 570, 574, 401 P.3d 148, 152 (2017) (citing *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). "These facts must be taken as true for the purposes of a motion to dismiss." *Id.* (citing *Idaho Wool Growers Ass'n, Inc. v. State*, 154 Idaho 716, 720, 302 P.3d 341, 345 (2012)).

procedures that would be required to request a doctor visit. The LPN told Williamson that she would return that afternoon to check on his vital signs, but did not return.

At 1:30 p.m., Williamson was taken to his video arraignment where he informed the judge and his public defender that he sustained a head injury; however, the proceeding went forward without interruption or questioning to verify whether Williamson needed further assistance. Williamson then returned to his cell, where he suffered throughout the night with a massive headache, tingling in the tips of his thumbs and fingers, nausea, and continual vomiting for at least six hours. He also claimed to smell a foul, metallic odor. Williamson's cellmates told the jailers that he was suffering from a concussion and needed to see a doctor. Despite his condition, Williamson was left in his cell with the lights on all night and he was unable to sleep, deteriorating his condition further. When allowed out of his cell for breaks, Williamson asked to see a medical doctor multiple times and was told he would see a doctor the following morning.

During the next morning, Williamson could see a doctor was in a nearby cell, so he waited for the doctor to come to his cell. The doctor never came. Williamson went to the guard station during his lunch break to ask why he had not been seen by the doctor. Instead of responding to his inquiry, the jailers returned Williamson to his cell. Around 3:00 p.m., still nauseous and suffering from vertigo, Williamson hit the emergency button on the advice of one of his cellmates. Williamson explained he hit the emergency button because he was in pain and had been asking for medical attention. The jailer informed Williamson that if he wanted to see a doctor he needed to fill out a blue colored "Ada County Jail Health Request" form, and that because he had not filled out the form, he was not on the list to see the doctor. No one had informed Williamson about the form despite his repeated requests to see a doctor over the previous 29 hours. While Williamson was filling out the form, a jailer approached and told Williamson to gather his belongings because he had been bonded out. Upon leaving the jail with the employee of the bonding company, Williamson left behind a 2' by 3' towel that was soaked with blood from his head wound.

After being taken home, Williamson's mother drove him to a Primary Health clinic where he was examined by a physician who instructed him to immediately go to a hospital emergency room for a CT scan. Around 6:00 p.m. Williamson arrived at the Saint Alphonsus emergency room where he was examined by a physician and a CT scan was administered. The CT scan confirmed that Williamson had sustained a concussion and the doctor instructed him to attend 5 to 7 days of brain injury services at STARS physical therapy/concussion program. Since leaving the jail,

3

Williamson reports continued lack of feeling in his fingertips and has sought treatment to determine the etiology of the condition.

Williamson alleges that the lack of diagnosis and/or treatment by the Ada County medical staff during the first 30 hours after the fall and concussion greatly exacerbated his symptoms and worsened his prognosis. Williamson was uninsured at the time of his injury and has incurred medical bills relating to his head injury totaling over $14,000. Along with the pain from the headaches and tingling in his hands, Williamson alleges he has suffered significant mental impairment because of the injury, including loss in cognitive function and ability to focus and concentrate on the kind of complex tasks he used to perform with ease. As a result, Williamson's claims his income potential has been diminished.

## B. Procedural Background

Before filing his complaint, Williamson timely filed a Notice of Tort Claim with the Ada County Clerk's Office pursuant to the Idaho Tort Claims Act (ITCA). Thereafter, Williamson filed a complaint against Ada County[2] raising three causes of action: (1) negligence under the ITCA and common law; (2) negligence in providing medical care; and (3) negligent infliction of emotional distress.

Over a year later, Ada County moved to dismiss under Idaho Rule of Civil Procedure 12(b)(6). Ada County asserted that it was statutorily immune from liability under the ITCA because decisions about prisoner safety and bedding were discretionary decisions. Williamson did not file any written opposition to the motion; however, his counsel opposed the motion at oral argument.

The district court granted Ada County's motion to dismiss. In considering Williamson's first cause of action for negligence, the district court determined that Ada County was performing a discretionary function or duty when Williamson was injured; thus, it was immune under the ITCA. Next, the district court determined that Ada County was exempt from liability for Williamson's claims arising from medical treatment because Idaho Code section 6-904B explicitly exempts government actors from liability over medical decisions provided to a person in custody. Last, the district court dismissed Williamson's claims for negligent infliction of emotional distress

---

[2] Williamson initially named Ashley Rino (the RN who treated him) and D. Kopczynski (the LPN who treated him) in the complaint, however, he failed to timely serve them and stipulated to their dismissal from the case.

after concluding they were grounded in torts for which Ada County was exempt from liability. Williamson filed a timely notice of appeal.

## II. ISSUES ON APPEAL

1.  Did the district court err in concluding that Ada County's selection of bunk beds was a discretionary function?

2.  Did the district court err in dismissing Williamson's claim that Ada County was negligent in ordering him to descend from the top bunk for roll call?

3.  Did the district court err in concluding Ada County was immune from liability for Williamson's claims alleging negligent medical treatment?

4.  Did the district court err in dismissing Williamson's claims for negligent infliction of emotional distress before allowing Williamson to produce evidence of his physical ailments?

5.  Did the district court err in failing to rule on whether immunity was precluded by the Eighth Amendment of the U.S. Constitution?

6.  Is Ada County entitled to attorney fees under Idaho Code section 12-121?

7.  Should sanctions be awarded against Ada County under Idaho Appellate Rule 11.2?

## III. STANDARD OF REVIEW

This Court reviews a district court's dismissal of a complaint under Idaho Rule of Civil Procedure 12(b)(6) *de novo. Parkinson v. Bevis*, 165 Idaho 599, 603, 448 P.3d 1027, 1031 (2019) (citing *Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010)).

> When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment. A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated. On review of a dismissal this Court determines whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief. In doing so, the Court draws all reasonable inferences in favor of the non-moving party.

*Id*. at 603–04, 448 P.3d at 1031–32 (quoting *Savage v. Scandit Inc.*, 163 Idaho 637, 640, 417 P.3d 234, 237 (2018)).

## IV. ANALYSIS

Williamson alleged three causes of action in his complaint: (1) negligence in failing to provide adequate safety equipment in the jail bunk beds and in ordering Williamson to descend from the top bunk for roll call; (2) negligence in failing to provide adequate medical care after the injury; and (3) negligent infliction of emotional distress. In its motion to dismiss, Ada County argued that it was statutorily immune from liability for Williamson's claims under the Idaho Tort

5

Claims Act. "The ITCA establishes that governmental entities are subject to liability for their own negligent or wrongful acts, and those of their employees who were acting within the course and scope of their employment." *Hoffer v. City of Boise*, 151 Idaho 400, 402, 257 P.3d 1226, 1228 (2011); I.C. § 6-903. "However, the ITCA also expressly exempts certain causes of action from the general rule that the entity is subject to liability." *Id*.

A.   **We affirm the district court's decision that Ada County's selection of bunk beds was a discretionary function for which Ada County has been granted immunity.**

Williamson first claims that Ada County failed to introduce adequate facts to support that its choice of bunk beds was a discretionary function; thus, the district court erred in ruling that Ada County was entitled to immunity on his first cause of action. Below and on appeal, Ada County claims it qualifies for the "discretionary function" exception to governmental liability found in Idaho Code section 6-904(1), which states in pertinent part:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
>
> 1.   Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

I.C. § 6-904(1).

"The discretionary function exception applies to governmental decisions entailing planning or policy formation." *Dorea Enterprises, Inc. v. City of Blackfoot*, 144 Idaho 422, 425, 163 P.3d 211, 214 (2007) (citing *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986)). "There is a two-step process for determining the applicability of this exception." *Id*. (citing *Ransom v. City of Garden City*, 113 Idaho 202, 205, 743 P.2d 70, 73 (1987); *City of Lewiston v. Lindsey*, 123 Idaho 851, 856, 853 P.2d 596, 600 (Ct. App. 1993)). "The first step is to examine the nature and quality of the challenged actions." *Id*. "Routine, everyday matters not requiring evaluation of broad policy factors will more likely than not be 'operational.' " *Id*. (quoting *Ransom*, 113 Idaho at 205, 743 P.2d at 73). Conversely, "[d]ecisions involving a consideration of the financial, political, economic and social effects of a policy or plan will generally be planning and 'discretionary.' " *Id*. "While greater rank or authority will most likely coincide with greater responsibility for planning or policy formation decisions; . . . those with the least authority may, on occasion, make planning decisions

which fall within the ambit of the discretionary function exception." *Id*. (quoting *Ransom*, 113 Idaho at 204, 743 P.2d at 72). "The second step is to examine the underlying policies of the discretionary function, which are: to permit those who govern to do so without being unduly inhibited by the threat of liability for tortious conduct, and also, to limit judicial re-examination of basic policy decisions properly entrusted to other branches of government." *Id*. (citing *Ransom*, 113 Idaho at 205, 743 P.2d at 73).

First, the Court must examine the "nature and quality" of Ada County's bedding decision to determine whether it was a daily, routine decision not involving the consideration of policy factors (i.e., operational), or if it was a decision based on a consideration of its financial, political, economic, and social effects (i.e., discretionary). *City of Lewiston*, 123 Idaho at 856, 853 P.2d at 600. Put another way, "[i]n suits brought under the Tort Claims Act, the 'planning/operational' test is used to demarcate decisions involving the formation of basic policy, entitled to immunity, from decisions involving the execution or implementation of that policy, not entitled to immunity." *Ransom*, 113 Idaho at 204, 743 P.2d at 72.

Ada County and the district court relied on a factually similar case that arose out of the federal district court in Connecticut. In *Francis v. United States*, the plaintiff fell and injured her ankle as she descended from a top bunk in a cell, claiming that she fell because the bunk bed did not have a ladder. No. 3:10CV1474 AWT, 2011 WL 3563146, at *1 (D. Conn. Aug. 12, 2011). The plaintiff also claimed that her recovery was delayed because she received improper medical treatment. *Id*. The U.S. District Court applied the following two-part test to determine what constitutes a "discretionary act" under the Federal Tort Claims Act:

> First, a discretionary act must be involved such that there is an element of judgment or choice. Discretionary acts include day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest. The court only needs to consider the second step if the action was discretionary under the first step. Second, even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield.

*Id*. at *5–6 (internal citations and quotations omitted). The U.S. District Court found the first prong to be satisfied "[b]ecause the decision as to whether to provide ladders on bunk beds is a matter of safety, involves discretion and is not specifically provided for by statute." *Id*. at *6. The court found the second prong was also met because "[p]roviding ladders presents 'valid safety and security concerns relating to the beds at issue. Guard rails, and sometimes ladders, are not included

7

because of the danger that they can be broken off and used as weapons or escape devices.' " *Id.* (quoting *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004)). Thus, "[t]he decision generally not to have bed rails . . . involve[s] the type of across-the-board policy-making judgment that the discretionary function exception was meant to leave to federal administrators, in this case prison administrators." *Id.*

The district court here likewise ruled:

> The decisions relating to the selection and purchasing of furniture in a jail falls under the umbrella of discretionary acts as understood by the statute. Ada County would have had to weigh financial and security considerations as to the type of bed, the inclusion or exclusion of ladders, and the type of flooring in its jail. The first prong of the test is satisfied.

> As to the second prong, this Court considers Ada County's decisions relating to the selection and purchasing of beds for the jail as allowing for governance without undue inhibition from the threat of tort liability and to limit judicial intrusion into policy matters entrusted to other branches of government. The decisions made regarding bunkbed selection and purchase is a discretionary one.

Williamson argues that despite Ada County's contention that the installation of bunk beds is a planning activity that "required analysis of the financial, political, economic, and social effects of the policy decision," Ada County failed to allege they used any process to determine what safety equipment should be installed or whether prisoner safety was a consideration in their selection of bunk beds. However, such a decision, by its nature, is "susceptible," as defined by other courts, to a policy analysis. The focus is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). Importantly, the decision "'need not *actually* be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" *Id.* (quoting *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (emphasis in original); *See also, e.g.*, *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019) ("[A]s long as a discretionary decision is susceptible to policy analysis, the [discretionary function] exception applies whether or not [the] defendant in fact engaged in conscious policy-balancing.") (internal citations and quotation marks omitted); *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 159 (6th Cir. 2018) ("Such 'social, economic, or political' policy analysis need not have actually occurred in the disputed instance, but rather the decision need only have been theoretically susceptible to policy analysis."); *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 858 (4th Cir.

8

2016) (quoting *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002)) (This is an objective rather than subjective standard, so courts "do not examine . . . 'whether policy considerations were actually contemplated in making the decision.' "). We adopt this reasoning here.

Further, the determination that Ada County's decision to use ladderless bunkbeds was discretionary is supported by other courts that have come to the same conclusion. *See Preston v. United States*, No. 1:08-CV-2493-CAM, 2010 WL 2975631, at *4 (N.D. Ga. July 27, 2010) (there are sound public policy reasons for not providing ladders on bunk beds in federal prisons, reasons grounded in prison and inmate safety); *Jackson v. United States*, No. 06-88 ERIE, 2007 WL 2033902, at *9 (W.D. Pa. July 12, 2007) (the decision not to add ladders to bunk beds was due to prison and inmate safety, and that this was "precisely the type of policy decision that is protected by the discretionary function exception."); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *16 (M.D. Pa. Mar. 30, 2012) (the decision whether to provide ladders for upper bunk access involves policy choices). We affirm the district court's determination that Ada County's selection of bunk beds is the type of discretionary decision protected by the ITCA.

**B.      We reverse the district court's dismissal of Williamson's claim that Ada County was negligent in ordering him to descend from the top bunk for roll call and remand the case.**

Together with Williamson's allegation that Ada County was negligent in failing to provide adequate safety equipment in its bunk beds, Williamson's complaint alleged: "Defendants were also negligent in needlessly ordering Plaintiff to descend from the top of his bunk bed for roll call, when the purpose of the roll call did not require any such action." On appeal, Williamson suggests the district court failed to rule on whether Ada County's decision to order him to descend from the bed was a discretionary decision entitled to immunity under the ITCA. Ada County responds "[t]he [d]istrict [c]ourt . . . appropriately ruled that the decision on the jail roll call process is discretionary."

In its decision the district court, under the subheading "Ada County was performing a discretionary function or duty when Mr. Williamson was injured," found that Williamson

> failed to demonstrate that the Ada County Sheriff's employee's decision to order him down from his bunk for roll call was malicious or had criminal intent. Based on the Complaint, roll call was occurring as to all inmates in the Ada County Jail. There is no indication that Mr. Williamson was being treated differently than any other inmate in the jail.

Mr. Williamson failed to state a claim of negligence for which relief can be granted under the ITCA. His claim for negligence against Ada County is dismissed.

Although the district court included no specific language that the jailer's decision to order Williamson down from his bunk bed was discretionary, its discussion of that issue falls under the umbrella of its conclusion that "Ada County was performing a discretionary function or duty when Mr. Williamson was injured." Even if we were to determine that this analysis is enough to constitute a ruling on the issue, the district court failed to conduct the requisite two-step inquiry for determining the applicability of the discretionary function exception to governmental liability. *Dorea*, 144 Idaho at 425, 163 P.3d at 214.

Ada County attempts to defend the district court's ultimate dismissal of the action by conducting its own two-prong analysis on appeal. Ada County asserts Williamson's claim attacks a broader policy Ada County has which requires inmates to stand for roll call, and that policy meets the first prong of the discretionary decision analysis because it requires consideration of broad policy factors, including its political and social impacts. In determining roll call policies, Ada County contends it would have to consider the impacts of the policy, including prisoner safety and jail security: requiring prisoners to stand would, presumably, give deputies the benefit of seeing the prisoner in full to make sure that the prisoner is safe and present in the cell.

Ada County also argues it satisfies the second prong, which requires courts to examine the underlying policies of the discretionary function—to permit governance without undue inhibition from the threat of liability and to limit judicial examination of policy decisions entrusted to other government branches. (Citing *Lamont Bair Enterprises, Inc. v. City of Idaho Falls*, 165 Idaho 930, 934, 454 P.3d 572, 576 (2019)). Ada County asserts that Idaho's sheriffs have been entrusted by the Idaho Legislature to "[t]ake charge of and keep the county jail and the prisoners therein." I.C. § 31-2202(6). Ada County reasons the development of roll call policies is the type of decision entrusted to Ada County by the Idaho Legislature and they should be free to perform this responsibility without undue inhibition from the threat of liability and to limit judicial examination of their policy decisions.

Ada County's reasoning is not supported by the record. In particular, there is no evidence supporting Ada County's position that there was a roll call *policy* in place. At the hearing on Ada County's motion to dismiss, Williamson characterized the jailer's decision to have him descend from his bunk bed for roll call as "a decision of the officer on duty that day" rather than a "policy";

10

thus, he argued it was not the kind of discretionary decision that would receive immunity under the ITCA. The district court responded:

> To follow this a little bit, I can see the officers walking to that cell, giving the order for roll call. And it could be perhaps three situations. One, they say, "I have no choice. My boss has told me this. I've got to do this. We've got to do this. We've got to do roll call. You've got to get out of the bunk," something like that. They don't believe its discretionary going ahead, and they order it.
>
> Second one they say it could go either way. I'm going to pick each day who I have roll call, who doesn't. I'll decide for some people – perhaps they're old or perhaps they're sick or perhaps I saw them five minutes ago – I'll exercise my discretion.
>
> The other one is there is no roll call at all. They just made it up and they just sort of caused it to happen. It's a one-off, and there is no policy they have at all.
>
> And there may be more versions of it . . . .

Ada County addressed the issue by arguing that "the choice whether to make inmates descend from the bunk" is discretionary, and that these (along with the choice of bedding) are "high-level decisions that would have to consider inmate safety above all else . . . Of course, when determining whether to do roll call, doing roll call is a safety consideration in and of itself." Ada County emphasized that Williamson had not alleged that either officer was acting outside the scope of what their bosses told them to do; thus, "[w]e're talking about the decision overall to make people stand and do roll call on a daily basis to make sure everybody is still doing okay . . . ." Later in the hearing, the following exchange took place concerning the two-prong analysis:

> [COURT]: So that question, the decision, having to descend the bunkbed, you earlier said this is a discretionary decision, in the language of the [S]upreme [C]ourt. The decision to have him step down, that's a routine operational matter or an actual discretionary plan or policy?
>
> [ADA COUNTY]: Discretionary plan or policy, your Honor. And again, I think this comes down to the framing of the complaint is not saying that those two sheriff's deputies took some particularly egregious action against this individual. It wasn't, "I was only made to descend from my bunkbed." It wasn't, "I was the only one made to stand for roll call."
>
> The larger – the attack of it is the larger policy decision of making someone stand for roll call. It wasn't anything in particular about those deputies' actions. It was that the complaint seems to attack the policy as a whole.
>
> Ada County continues this rhetoric on appeal, suggesting that
>
> nothing in Mr. Williamson's Complaint proposes that the Ada County Jail deputies were violating policy in requiring Mr. Williamson to descend from his bunk bed for roll call or that they treated Mr. Williamson any differently than his fellow

11

prisoners. Instead, it appears that Mr. Williamson attacks the policy behind requiring him to stand for roll call.

Ada County notes that because Williamson is suing the governmental entities instead of the individual deputies involved, he appears to be "attacking the greater policy decision-making behind bunk beds and roll call." Williamson counters that there is simply no evidence of such a roll call policy in the record.

Again, "[i]n suits brought under the Tort Claims Act, the 'planning/operational' test is used to demarcate decisions involving the formation of basic policy, entitled to immunity, from decisions involving the execution or implementation of that policy, not entitled to immunity." *Ransom*, 113 Idaho at 204, 743 P.2d at 72. The district court's own initial discussion on this issue highlights why Ada County's motion to dismiss should have been denied on this claim. The court presented three viable options for what happened when Williamson was ordered to descend from the bunk bed, with at least one depicting the implementation of a policy rather than an attack on the policy itself, should one exist. Routine decisions not involving the consideration of policy factors are considered operational and are not entitled to immunity. On the other hand, decisions based on financial, political, economic, and social effects are considered discretionary, and are entitled to immunity.

Because there are at least three plausible theories for the jailer's decision to order Williamson to descend from his bunk bed for roll call at the time of his injury, the record is insufficient to conclude that the decision was a discretionary one. The decision could just as easily have been an operational decision by the jailer on duty that day. *See Freeman v. Juker*, 119 Idaho 555, 808 P.2d 1300 (1991) (Even where it seemed "likely that a decision . . . was probably the result of a deliberate decision bound up with the formulation of policy and therefore immune from liability" absent a factual basis in the record, judgment on the pleadings was improper). Thus, we reverse the district court's dismissal and remand the case on this issue.

Williamson also argues that because the district court found Williamson had not proven that Ada County's employee acted with malice or criminal intent, Williamson's claim was not subject to the indemnification provisions of Idaho Code section 6-903. Williamson contends that is significant because by finding that he had not proved Ada County's employee acted with malice or criminal intent, the district court ensured that Ada County could not escape liability for the

actions of their employee. Williamson misunderstands Idaho Code section 6-903 and this Court's decision in *Hoffer v. City of Boise*, 151 Idaho 400, 257 P.3d 1226 (2011).

Idaho Code section 6-903(2)(i) provides for the indemnification of governmental employees "against any claims brought against the employee in the employee's individual capacity when the claims are related to the course and scope of employment . . ." I.C. § 6-903(2)(i); however, the governmental entity may refuse to defend an employee if it is determined that the act or omission was not within the course and scope of employment or resulted from malice or criminal intent. *Id*. at (3). That said, there are no individual defendants here, thus the statute does not offer Williamson the relief he seeks.

The relevant ITCA provision implicated here is Idaho Code section 6-904. This section grants a governmental entity and its employees immunity for any claim, while acting in the course and scope of their employment and without malice or criminal intent, which

> [a]rises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

I.C. § 6-904(1).

In *Hoffer v. City of Boise*, the owner of a trailer park sued the city asserting claims of tortious interference with contract and defamation, among other claims, after the city (1) issued notices to the owner requiring electrical improvements to the park, and (2) posted notices around the park when the owner failed the make the improvements. 151 Idaho at 401, 257 P.3d at 1227. Hoffer additionally alleged that the city, through its agents or employees, made false statements to a newspaper regarding Hoffer's compliance with the city requirements. *Id*. The city filed a motion to dismiss, arguing that because Hoffer had not alleged the city employees acted with malice and/or criminal intent, the city was immune from liability. *Id*. The district court granted the city's motion. *Id*. This Court affirmed the district court's dismissal of Hoffer's claims after concluding Idaho Code section 6-904(3) exempts governmental entities from liability for the torts at issue. *Id*. at 402, 257 P.3d at 1228.

In reaching this conclusion, the Court distinguished between tort liability for governmental entities versus potential liability of their employees, recognizing: "The plain language of the first clause of that section exempts governmental entities from liability for the torts it lists, whether or

13

not there has been an allegation of malice or criminal intent." 151 Idaho at 402, 257 P.3d at 1228 (internal citation omitted). [3] The Court explained:

> The requirement that an employee have acted "within the course and scope of their employment" plainly applies to the act of the employee and not of the governmental entity. Therefore, the language "and without malice or criminal intent" that follows the statute's requirement that the employee have acted within the course and scope of employment, also by its plain language only applies to the employee.

*Id.* at 402–03, 257 P.3d at 1228–29.

Thus, based on this Court's decision in *Hoffer*, whether Williamson pled malice or criminal intent is irrelevant to the determination of whether Ada County and the Ada County Sheriff, both of which are governmental entities, are immune from liability for discretionary decisions under Idaho Code section 6-904(1). Even so, we reverse the district court's decision on this issue and remand Williamson's claim that Ada County was negligent in ordering him to descend from the top bunk for roll call. Whether that order was based on a policy is unknown based on this record, and will be subject to further consideration on remand.

**C.    We affirm the district court's holding that Ada County was immune from liability arising from Williamson's claim he received improper medical treatment at the jail.**

The district court concluded Ada County is exempt from liability for Williamson's claims arising from his medical treatment under the ITCA, which provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which:
>
>> 5. Arises out of any act or omission providing or failing to provide medical care to a prisoner or person in the custody of any city, county or state jail, detention center or correctional facility.

I.C. § 6-904B(5). "Gross negligence" is defined as "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of

---

[3] Williamson makes several references to Chief Judge Lansing's special concurrence, attributing the concurrence to *Hoffer v. City of Boise*, 151 Idaho 400, 257 P.3d 1226 (2011), in both his opening and reply briefs. Importantly, Chief Judge Lansing's concurrence appears in an unpublished opinion from the Court of Appeals, not this Court. *See* 2010 WL 9585780, 2. The unpublished decision was superseded by this Court's opinion issued after a petition for review. Moreover, although Chief Judge Lansing believed the Court's decision in *Sprague v. City of Burley*, 109 Idaho 656, 710 P.2d 566 (1985) misinterpreted section 6-903(c), this Court specifically rejected the request to overrule it. *Hoffer*, at 403 n.1, 257 P.3d at 1229 n.1. Thus, Williamson cannot rely on the concurring opinion in a superseded decision as authoritative, and the misstatements and repeated citations to it border on sanctionable conduct under I.A.R. 11.2(a).

contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others." I.C. § 6–904C(1). "Reckless, willful and wanton conduct" is defined as "present only when a person intentionally or knowingly does or fails to do an act creating an unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result." I.C. § 904C(2).

In his complaint, Williamson alleged the Defendants' "negligence in failing to diagnose, treat properly or bring Defendant's [sic] injuries to a physician resulted in a worsening of Plaintiff's injuries and future health outcomes[.]" Williamson also alleged:

> The conduct of Defendants, alleged herein, was done maliciously, intentionally and willfully, with gross negligence and reckless disregard for, and in extreme deviation of all appropriate and reasonable standards of care pertaining to the facts of this case. Mr. Williamson believes that the Defendants deliberately understated his symptoms and misdiagnosed him, and intentionally kept him from being examined [by] a doctor for the injuries sustained while in custody of the Defendant, Ada County.

Williamson argues that the factual allegations in his complaint support a finding of Ada County's egregious behavior. Despite several requests for treatment and complaints of painful symptoms, the loud crack of his skull against the concrete, and the obvious blood loss, the custodians at the Ada County jail, including medical providers, sought to shut down his complaints by promising him that he would be treated later, only to fail to provide even that promised treatment. Williamson asserts that Ada County lied to him about arranging his treatment, despite the duty of care they owed him as his custodians, constituting malice and criminal intent.

The district court dismissed Williamson's claim after concluding his allegations were grounded in torts for which Ada County was exempt from liability, i.e., the medical care provided to a prisoner or person in custody in jail. Ada County argues that, similar to discretionary immunity, governmental entities are immune from the torts listed in Idaho Code section 6-904B whether a plaintiff has alleged any harmful intent or not. Ada County emphasizes that the opening clause of Idaho Code section 6-904B parallels section 6-904, providing "[a] governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct."

Applying the Court's logic in *Hoffer*, the language "without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct," applies only to the employee,

15

not the governmental entity. *See Hoffer,* 151 Idaho at 402–03, 257 P.3d at 1228–29 (the language "and without malice or criminal intent" that follows the statute's requirement that the employee have acted within the course and scope of employment, also by its plain language only applies to the employee). Because the employees Williamson tried to sue—the RN and LPN—have been dismissed from the case, all that remain are the governmental entities. Ultimately, Ada County is not "liable for any claim which . . . [a]rises out of any act or omission providing or failing to provide medical care to a prisoner or person in the custody of any city, county or state jail, detention center or correctional facility." I.C. § 6-904B(5). Thus, we affirm the district court's conclusion in that regard. Once Williamson indicated he was no longer pursuing the RN and the LPN, his claim against Ada County ceased to exist.

**D.    We affirm the district court's dismissal of Williamson's negligent infliction of emotional distress claims.**

Next, Williamson alleges that the district court erred in dismissing his negligent infliction of emotional distress claims. "The elements of negligent infliction of emotional distress are (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013) (citing *Nation v. State Dept. of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007)). "Additionally, there must be a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Id.* (quoting *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989)).

In his complaint, Williamson alleged that Ada County owed him a legal duty to "act as a steward and a fiduciary . . . as he was in their custody and unable to exercise freedoms in choosing his bedding and choosing his health care provider[,] engage in professional medical care . . . [,] and exercise ordinary care to prevent unreasonable, foreseeable risk of harm." He alleged breach of those duties when Ada County "used substandard, knowingly dangerous bedding without proper safety features" and by "failing to properly diagnose [Williamson], follow a treatment plan, or schedule an appointment with a doctor."

The district court dismissed Williamson's negligent infliction of emotional distress claims after concluding "both of Mr. Williamson's allegations of negligent infliction of emotional distress claims are grounded in torts for which Ada County is exempt from liability . . . . Without a legal

16

duty recognized by law, there can be no breach of such duty." Because we have affirmed the district court's dismissal on each claim Williamson linked to his negligent infliction of emotional distress claims—Ada County's discretionary act of choosing beds for the jail and immunity arising from medical care provided to a person in custody—we likewise affirm the district court's dismissal of Williamson's negligent infliction of emotional distress claims.

**E.      Williamson did not preserve his Eighth Amendment claim for appeal.**

Last, Williamson contends that the immunity in Idaho Code section 6-904B, exempting Idaho governmental agencies from liability for failure to provide medical care to inmates in Idaho jails, is overly broad and should be found unconstitutional because it is preempted by the Eighth Amendment's prohibition against deliberate indifference. Ada County argues that Williamson's constitutional claim must fail because he did not raise this issue below. In general, constitutional issues will not be considered if raised for the first time on appeal. *State v. Barr*, 166 Idaho 783, 787, 463 P.3d 1286, 1290 (2020) (citing *Roell v. Boise City*, 134 Idaho 214, 216, 999 P.2d 251, 253 (2000)). "Failure to properly raise such an issue below is a waiver of the right to raise the issue on appeal." *Id*.

In response to Ada County's argument, Williamson "simply points to the record" and asserts that he raised the issue at the hearing on Ada County's motion to dismiss. At the hearing on Ada County's motion to dismiss, the district court—not Williamson—raised a question concerning the Eighth Amendment's applicability:

> [COURT]: Okay. My second question is have you brought an Eighth Amendment claim for violation of [Williamson's] Eighth Amendment rights?
>
> [DEFENSE COUNSEL]: Your Honor, I believe that the claims that we brought were for negligence in providing for Mr. Williamson's safety and for his medical care while he was in the custody of the State.
>
> Whether that expands to the Eighth Amendment or whether the Eighth Amendment accrues to an individual once they are within the state system, I believe, is – I believe that we would have an Eighth Amendment claim in this case as Mr. Williamson was detained and had been in custody at the time of these events.
>
> [COURT]: So my question was as to whether you had brought one and you believe there would be one.
>
> My question is, is one of these three counts currently your Eighth Amendment claim? Or one or more of them? Or is it something you say you may bring in the future?
>
> [DEFENSE COUNSEL]: Your Honor, I believe it said it specifically is a claim we could bring in the future.

[COURT]: Could bring in the future?

[DEFENSE COUNSEL]: Yes, [Y]our Honor.

Later, the district court noted, "I'm not here to say whether Mr. Williamson has an Eighth Amendment right attached or whether you brought it. I'm just focusing on the question, whether it's a defense for dismissal under the statute."

While Williamson asserts that he is not making an Eighth Amendment claim for the first time on appeal, the district court specifically noted that "Mr. Williamson has not argued that the statute is unconstitutional, either facially or as applied to him." The record fully supports the district court's conclusion. Therefore, based on this holding, and the record before us on appeal, we hold that Williamson failed to preserve his constitutional claim for review.

## F.     We decline to award attorney fees on appeal.

Ada County requests attorney fees under Idaho Code section 12-121. Ada County claims that on appeal, Williamson reargues the same issues he argued to the district court, in addition to new issues which cannot be heard on appeal. Ada County claims Williamson did not present any new evidence or authority showing that the district court erred in dismissing the case, rather, he appears to be inviting the Court to second guess the district court's findings. Thus, Ada County argues Williamson's appeal was pursued frivolously, unreasonably, and without foundation.

Idaho Code section 12-121 allows the award of reasonable attorney fees to the prevailing party in any civil action where the case "was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. The prevailing party may also be entitled to fees if the appeal merely invites the Court to second-guess the findings of the lower court. *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021) (citing *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010)). Ada County has only prevailed in part; thus, it is not entitled to attorney fees under section 12-121.

## G.     We decline to award sanctions.

Williamson argues that at several points in their brief the Ada County Defendants misstated the record, placing themselves in jeopardy of sanctions. Idaho Appellate Rule 11.2 provides:

> (a) . . . The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

"Rule 11 Sanctions are appropriate where an argument on appeal 'was so far outside the realm of reasonability that it warrants a sanction.' " *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 330, 297 P.3d 1134, 1147 (2013) (quoting *Martin v. Smith*, 154 Idaho 161, 164, 296 P.3d 367, 370 (2013)). "However, even where the issues raised on appeal are 'dubious,' fees will not be awarded under Rule 11.2 unless the Court can conclude that 'the appeal was interposed for an improper purpose.' " *Id.* (quoting *Funes v. Aardema Dairy*, 150 Idaho 7, 13, 244 P.3d 151, 157 (2010)).

Most of the case law discussing Rule 11.2 focuses on whether an appellant has filed an appeal with an improper purpose. Even so, Williamson contends sanctions are appropriate because Ada County expressly makes contentions that are not grounded in fact and have no basis in law. Williamson first challenges Ada County's statement that the district court *ruled* that the order that Williamson descend from his bed and stand during roll call was discretionary. (Emphasis added). Ada County counters that the district court did, in fact, rule on the issue.

As discussed above in Section B, under the subheading "Ada County was performing a discretionary function or duty when Mr. Williamson was injured," the district court held that Williamson

> failed to demonstrate that the Ada County Sheriff's employee's decision to order him down from his bunk for roll call was malicious or had criminal intent. Based on the Complaint, roll call was occurring as to all inmates in the Ada County Jail. There is no indication that Mr. Williamson was being treated differently than any other inmate in the jail.

Even though we determined the district court did not rule on whether Ada County's order that Williamson stand for roll call was discretionary, Ada County's position that the district court did rule is at least a plausible argument given the district court's ultimate dismissal of the case. As a result, it cannot be considered "so far outside the realm of reasonability that it warrants a sanction." *Bettwieser*, 154 Idaho at 330, 297 P.3d at 1147. Thus, we decline to award sanctions on this basis.

19

Second, Williamson objects to Ada County's repeated reference to a "policy" regarding roll call despite the failure to include any such policy in the record. Ada County explains that it did not refer to a "roll call policy" because the record contained a specific policy; rather, the reference speaks to Williamson's general attack on the overarching policy behind requiring prisoners to stand during roll call. As explained above, we are remanding the case on this issue. Still, Ada County's position that Williamson is attacking a broader policy requiring inmates to descend from their bunk beds, even if not supported by a written policy in the record, is not "so far outside the realm of reasonability that it warrants a sanction." *Bettwieser*, 154 Idaho at 330, 297 P.3d at 1147. Thus, we decline to award sanctions on this basis.

## V. CONCLUSION

We reverse the district court's decision to dismiss Williamson's claim that Ada County was negligent in ordering him to descend from the top bunk for roll call and remand the case for further proceedings. We therefore vacate the judgment in that regard. We affirm the district court's dismissal of Williamson's remaining claims. Inasmuch as both parties prevailed, in part, no attorney fees or costs are awarded on appeal.

Justices BRODY, STEGNER, MOELLER, and ZAHN, CONCUR.

20